UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAFAEL IZAGUIRRE DEL TORO, | CASE NO. C26-0741-KKE |
| Petitioner(s), | ORDER ON HABEAS PETITION |
| v. | |
| WARDEN NORTHWEST ICE PROCESSING CENTER, | |
| Respondent(s). | |

Petitioner, proceeding *pro se*, filed a petition for a writ of habeas corpus, asserting that his re-detention by Immigration and Customs Enforcement ("ICE") without a hearing violated his right to due process. Dkt. No. 4. The briefing on Petitioner's habeas petition is now complete.[1] Dkt. Nos. 1, 7, 11. For the reasons below, the Court will grant Petitioner's habeas petition.

---

[1] The Court observes that on April 27, 2026, it received, returned as undeliverable, a copy of a court order that was previously mailed to Petitioner at the NWIPC. Dkt. No. 12. On the envelope was a handwritten annotation: "RD Not Here." *Id.* Before taking further action on the habeas petition, the Court ordered the Government to file a status report apprising the Court of Petitioner's custody status. Dkt. No. 13. The Government indicated that Petitioner was in fact still detained at the NWIPC. Dkt. No. 14. The Court is deeply troubled that Petitioner appears unable to receive legal mail (including this Court's own orders) reliably at the NWIPC. It is additionally troubling that someone at the NWIPC at best, mistakenly, but nevertheless, falsely, represented to the Court that Petitioner was no longer detained there. Dkt. No. 12. Had the Court not requested additional information from the Government, it could have taken that representation to be true and dismissed the petition as moot rather than resolve it on the merits, at the expense of Petitioner's liberty. *See, e.g.*, *Mehrabi v. Bondi*, 2:25-CV-02227-DGE-TLF, 2026 WL 30228 (W.D. Wash. Jan. 5, 2026) (denying habeas petition as moot where petitioner had been removed). Respondents are admonished to ensure the timely delivery of mail to detainees and the accuracy of representations regarding detainees' custody status.

## I.     BACKGROUND

**A.     Factual Background**

Petitioner Rafael Izaguirre del Toro is a native and citizen of Cuba who, on June 26, 2024, presented at the Paso Del Norte Port of Entry.  Dkt. No. 8 ¶ 4.  The same day, U.S. Customs and Border Protection ("CBP") determined that Petitioner was inadmissible and served him with a Notice to Appear ("NTA") charging him as an "arriving" noncitizen under Section 212(a)(7)(A)(i) of the Immigration and Nationality Act ("INA"), and ordering him to appear before an immigration judge on August 21, 2024.  Dkt. No. 9-1 at 8–11.  The NTA further specified that Petitioner would be "paroled into the United States pursuant to section 212(d)(5) of the [INA]," which is codified 8 U.S.C. § 1182(d)(5), and initiated removal proceedings "under section 240 of the [INA]," which is codified at 8 U.S.C. § 1229a.  *Id.*  The Government filed the declaration of Deportation Officer Adrian Leyba in support of its return memorandum.  *See* Dkt. No. 8.  According to Officer Leyba, that parole was set to expire in two years.[2]  Dkt. No. 8 ¶¶ 4–6.  Without providing further detail, Officer Leyba states that on April 18, 2025, Petitioner's parole "was terminated."  *Id.* ¶ 8.

On May 21, 2025, Petitioner appeared for a master calendar hearing in his removal proceedings.  *Id.* ¶ 9.  At that hearing, the IJ granted the Department of Homeland Security's ("DHS") motion "to dismiss removal proceedings without prejudice," (*id.*) based upon DHS's argument "that circumstances of the case have changed after the notice to appear was issued" (Dkt. No. 4 at 17).  The record does not provide additional detail as to what those changed circumstances are.  ICE arrested Petitioner after that hearing, and transported him to the Northwest ICE Processing Center ("NWIPC") "to be processed for Expedited Removal," where he remains detained.  Dkt. No. 8 ¶ 10.

---

[2] The Court notes that two years from June 26, 2024 is June 26, 2026.

ORDER ON HABEAS PETITION - 2

Petitioner subsequently claimed a fear of return to Cuba. *Id.* ¶ 11. On August 5, 2025, United States Customs and Immigration Services ("USCIS") made a negative credible fear determination. *Id.* On August 7, 2025, following a credible fear review hearing, an immigration judge vacated USCIS's negative credible fear determination. *Id.* ¶ 12.

DHS issued Petitioner another NTA which initiated separate removal proceedings, again "under section 240 of the [INA]." Dkt. No. 9-1 at 2, Dkt. No. 8 ¶ 12. Petitioner's "final merits hearing on his applications for relief from removal" was scheduled for April 21, 2026, after apparently being continued multiple times at Petitioner's request. Dkt. No. 8 ¶ 15. The Government has not provided any update as to the result of that hearing.

On September 24, 2025, Petitioner applied for adjustment of status under the Cuban Adjustment Act, "which has long permitted Cuban nationals who were admitted or paroled into the United States to become lawful permanent residents after being here for more than a year." *Coal. for Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 56 (D.D.C. 2025) ("*Coalition*") (quoting Cuban Adjustment Act of 1966 ("CAA"), 89 Pub. L. 732, 80 Stat. 1161 and 8 U.S.C. § 1255); Dkt. No. 8 ¶ 14, Dkt. No. 4 at 20. Petitioner's application remains pending with USCIS. Dkt. No. 8 ¶ 14.

**B.     Statutory Framework**

1.  Expedited Removal Proceedings

In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRAIRA"), Congress created two processes for removing noncitizens who are deemed ineligible to enter or remain in the United States: Section 240 removal proceedings and expedited removal proceedings. *See* Pub. L. 104-208, 110 Stat. 3009, 3009–546 (1996); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108–09 (2020).

ORDER ON HABEAS PETITION - 3

8 U.S.C. § 1229a governs the "usual removal process," (so-called "Section 240" removal proceedings) which involves an evidentiary hearing before an immigration judge ("IJ"). *Thuraissigiam*, 591 U.S. at 108. During that hearing, the noncitizen may "attempt to show that he or she should not be removed," and is afforded certain rights, including the right to hire counsel, to examine evidence against them, to present evidence, and to cross-examine government witnesses. *Id.*; 8 U.S.C. § 1229a(b)(4)(A)–(B). An employee of the Department of Justice who is a licensed attorney "has a duty to develop the record in cases before them." *Coalition*, 805 F. Supp. 3d at 58–59. Section 240 proceedings are recorded, may occur across multiple hearings, and upon a decision by the IJ, parties may appeal to the Board of Immigration Appeals ("BIA"), and further appeal may be taken to a U.S. court of appeals. *Id.*; 8 U.S.C. § 1252. The prolonged nature of Section 240 removal proceedings "allows time for noncitizens to both gather evidence … and seek collateral relief from other components of DHS (like adjustment of status on the basis of marriage or family)." *Coalition*, 805 F. Supp. 3d at 58–59.

"Expedited removal," in contrast, permits the fast-tracked removal of noncitizens who meet certain statutorily prescribed criteria (which are determined by reviewing immigration officers). *See* 8 U.S.C. § 1225(b)(1). Apart from consideration of requests for asylum, noncitizens subject to expedited removal are not afforded the procedural protections available in standard removal proceedings. *See id.* Specifically, once "an immigration officer determines" that an applicant for admission "is inadmissible," "the officer shall order the [noncitizen] removed from the United States without further hearing or review." *Id.* § 1225(b)(1)(A)(i). However, if the applicant "indicates either an intention to apply for asylum … or a fear of persecution … the officer shall refer the [noncitizen] for an interview by an asylum officer[.]" *Id.* § 1225(b)(1)(A)(ii). Where the officer finds a credible fear of persecution, the applicant "shall be detained for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii). But if the officer determines

ORDER ON HABEAS PETITION - 4

the applicant does not have a credible fear of persecution, the officer "shall order the [noncitizen] removed from the United States without further hearing or review." *Id.* § 1225(b)(1)(B)(iii)(I). Noncitizens "subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).   And, in contrast to section 240 removal proceedings, a noncitizen ordered removed pursuant to expedited removal proceedings generally cannot appeal such a decision. *See* 8 C.F.R. § 235.3(b)(2)(ii).

　　2.　Parole Under § 1182(d)(5)(A)

Noncitizens who are subject to mandatory detention under § 1225(b) may nevertheless be "parole[d] into the United States temporarily … on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A); *see Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).   Parole is, however, "not [to] be regarded as an admission of the [noncitizen]." 8 U.S.C. § 1182(d)(5)(A).  Instead, once the purposes of parole are achieved, the noncitizen "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

DHS regulations set forth conditions under which the DHS Secretary and his delegees may grant and terminate parole. *See* 8 C.F.R. § 212.5.  Those regulations specify that DHS may either "automatically" terminate parole or terminate parole "[o]n notice." *Id.* §§ 212.5(e)(1), (e)(2)(i). Parole terminates automatically and without written notice where the noncitizen departs the United States, or, "if not departed, at the expiration of the time for which parole was authorized." *Id.* § 212.5(e)(1).   In all other instances, parole "shall be terminated upon written notice to the [noncitizen]." *Id.* § 212.5(e)(2)(i).   Termination of parole with notice occurs only "upon accomplishment of the purpose for which parole was authorized" or when an authorized DHS

ORDER ON HABEAS PETITION - 5

official determines that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." *Id.* In other words, where it is not automatic, termination of parole requires both (1) written notice to the noncitizen, and (2) a finding by DHS officials that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." *Id.*

## II.   ANALYSIS

Petitioner argues that his detention is "unlawful and violates due process" owing both to his release on humanitarian parole, and the fact that the Government did not provide "adequate individualized justification" for his detention. Dkt. No. 4 at 3. He further alleges his continued detention violates the Due Process Clause of the Fifth Amendment as it has "become unreasonable and arbitrary." Dkt. No. 4 at 22. Petitioner asserts that his continued pursuit of adjustment of status under the Cuban Adjustment Act further undermines his detention. *Id.* at 22–25.

In its return, the Government argues Petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b), "which mandates detention during the pendency of removal proceedings." Dkt. No. 7 at 6. The Government accordingly applies the multi-factor test from *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117–18 (W.D. Wash. 2019) and argues that the facts in this case support that "most factors are either neutral or favor the United States[.]" Dkt. No. 7 at 8. The Government asks the Court to, if it is "inclined to grant some form of relief," limit such relief to "ordering the immigration court to conduct a bond hearing." *Id.* The Court agrees with the Government that Petitioner is detained pursuant to 8 U.S.C. § 1225(b). However, because the Government violated Petitioner's statutory, regulatory, and due process rights, the Court will grant his habeas petition.

## A.   Legal Standard

Because Petitioner proceeds *pro se*, the Court construes his filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Writs of habeas corpus may be granted by … the district

courts … within their respective jurisdictions." 28 U.S.C. § 2241(a).  To succeed on his petition, Petitioner must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 8 U.S.C. § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

**B.    Petitioner's Detention was Unlawful.**

The Court agrees with Petitioner that his detention was unlawful.  The evidence provided to the Court shows that Petitioner was detained before his parole was set to expire.  *See* Dkt. No. 8 ¶¶ 4, 6.  Accordingly, automatic termination of parole could not have been a proper basis for detaining Petitioner.  8 C.F.R. § 212.5(e)(1).  The Government provides no evidence to support that it complied with 8 C.F.R. § 212.5(e)(2)(i) by providing Petitioner with written notice of the termination of his parole.  Nor does the Government provide any evidence that any DHS official made the requisite determination that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." *Id.*  Here, the Government does not even attempt to argue that the requirements for terminating parole under § 1182(d)(5)(A) and its implementing regulations have been met, and instead states only that "[o]n April 18, 2025, Petitioner's parole was terminated." Dkt. No. 8 ¶ 2.  And nothing in the record suggests that the humanitarian or public interest grounds that supported Petitioner's initial grant of parole ceased to exist on April 18, 2025.  Therefore, in line with other courts in this District, the Court finds that the revocation of Petitioner's parole and subsequent detention were unlawful.  *See, e.g.*, *Molina Arzola v. Facility Admin.*, 2:26-CV-00717-DGE, 2026 WL 1045508, at *4 (W.D. Wash. Apr. 17, 2026) (holding that where the Government failed to provide evidence of written notice to Petitioner or that the purposes of humanitarian parole had been served, "Petitioner's parole was never revoked and his detention … was unlawful"); *Torres v. Hermosillo*, Case No. 2:25-cv-02687-LK, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026) (holding the Government violated petitioner's

ORDER ON HABEAS PETITION - 7

statutory and due process rights where it revoked humanitarian parole without providing evidence that it followed federal regulations).

**C.      Petitioner's Detention Violates Due Process.**

In this case, Petitioner contends that his arrest and re-detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution (Dkt. No. 4 at 22–24), which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V.  The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context."  53 F.4th 1189, 1206–07 (9th Cir. 2022).  The Court will consider each *Mathews* factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements.

1.  Petitioner has a protected interest in his liberty.

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  Here, where Petitioner was released on parole on June 26, 2024 and had been living freely in his community for almost one year before he was detained (Dkt. No. 8 ¶¶ 4, 6, 9), "the constitution does not countenance fictional erasure of [his] actual presence in this country—or [his] concomitant due process rights."  *Torres*, 2026 WL 145715, at *5.  A "parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," and, as such, the parolee's liberty interest "is valuable and must be seen as within the protection of the [Due Process clause]."  *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).  Thus, "termination [of parole] calls for some orderly process[.]"  *Id.*  "This Court joins many others in finding that humanitarian parole can establish the same kinds of liberty interests described in *Morrissey*."  *Torres*, 2026 WL 145715, at *5 (collecting cases); *see also Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause.").

Accordingly, the first *Mathews* factor favors Petitioner.

2.  The risk of erroneous deprivation of liberty is high.

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the risk of erroneous deprivation of Petitioner's liberty interest in the absence of a pre-detention hearing is high.  424 U.S. at 335.  As described earlier in this order, Petitioner was arrested and detained after he appeared for a scheduled immigration hearing.  Dkt. No. 8 ¶ 10.  Before he was arrested, the Government never lawfully terminated his parole by providing requisite notice.  "[T]herefore the risk of erroneous deprivation in fact materialized in this case."  *Molina Arzola*, 2026 WL 1045508, at *6.  Further,

ORDER ON HABEAS PETITION - 9

the Court shares in the due process concerns raised in *Molina Arzola*. There, as in this case, the Government moved to dismiss the petitioner's removal proceedings, then filed a new charge and took him into custody "to be processed for Expedited Removal." Dkt. No. 8 ¶ 10. "Without any evidence to the contrary, this appears to the Court like a back-door maneuver to revoke Petitioner's parole without providing the notice and opportunity to be heard as required by the applicable regulations." *Molina Arzola*, 2026 WL 1045508, at *6. "This particular scheme—i.e., moving to terminate § 1229a removal proceedings of a non-detained individual as a means of initiating expedited removal proceedings and subjecting the non-detained individual to mandatory detention—raises serious due process concerns." *Id.* at *4 n.5.

In sum, the Court finds that the second *Mathews* factor favors Petitioner.

3.  The Government's interest in civil detention is low.

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without complying with 8 C.F.R. § 212.5. 424 U.S. at 335. Although the Government has a strong interest in enforcing immigration laws generally, *Rodriguez Diaz*, 53 F.4th at 1208, that interest is not necessarily threatened if it is required to comply with federal regulations. *See O.F.B. v. Maldonado*, 810 F.Supp.3d 394, 404–05 (E.D.N.Y. 2025) (holding government's interests in enforcing immigration laws "is not impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5 because it is required to follow [its] own regulations." (citation modified)). Indeed, here, Respondents cite no particular reason for revoking Petitioner's parole that might support an interest in detaining him without notice. Petitioner's Form I-213, which was completed contemporaneously to his arrest, notes only that his arrest followed "direction from ERO Headquarters [that Petitioner's] case was identified for reprocessing as Expedited Removal." Dkt. No. 9-2 at 3. That same form indicates that Petitioner has no criminal history. *Id.*

ORDER ON HABEAS PETITION - 10

For these reasons, the Court finds that the Government's interest in re-detaining Petitioner without first complying with 8 C.F.R. § 212.5 is minimal: any administrative or financial burdens in complying with the regulations are far outweighed by the risk of erroneous deprivation of the liberty interest at issue.  Indeed, "the additional procedural safeguards identified in 8 C.F.R. § 212.5 are not only valuable for preventing the erroneous deprivation of an important interest, they are required by the Section 1225 statutory scheme that the government insists applies." *O.F.B.*, 810 F. Supp. 3d at 404.

The Court's review of the *Mathews* factors indicates that Petitioner's re-detention does not comport with due process.

### III.   REMEDY

Having determined that Petitioner's re-detention violates his statutory and regulatory rights as well as his constitutional right to due process, the Court concludes his detention is unlawful and will grant his habeas petition.  The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief."  *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013).  "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require."  *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

The Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release.  *See, e.g.*, *Molina Arzola*, 2026 WL 1045508, at *7 (ordering release where humanitarian parole was unlawfully revoked); *Torres*, 2026 WL 145715, at *8 (same); *Camacho-Gutierrez v. Thompson*, 5:25-CV-01876-MA, 2026 WL 195758, at *5 (W.D. Tex. Jan. 16, 2026).

ORDER ON HABEAS PETITION - 11

Furthermore, as explained in this order, the parole statute, its implementing regulations, and due process require that Petitioner receive notice before his parole may be revoked.

### IV.  CONCLUSION

For these reasons, the Court GRANTS the habeas petition.  Dkt. No. 4.  The Court ORDERS as follows:

1) Within ONE DAY of this order, Petitioner shall be released from custody on the same conditions of parole previously imposed before his May 2025 arrest.

2) Petitioner shall not be re-detained, absent urgent circumstances, without compliance with the pre-deprivation procedures set forth in 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e).

3) The Government shall file a declaration no later than THREE DAYS from the date of this order, documenting Petitioner's release in compliance with this order.

Dated this 11th day of May, 2026.

Kymberly K. Evanson
United States District Judge

ORDER ON HABEAS PETITION - 12